## RAWLS *v.* THE STATE.

1. In a prosecution for assault with intent to murder, where the defendant is convicted of the offense of unlawfully shooting at another and by his own statement is guilty of that offense, he can not justly complain of the admission of evidence offered to show malice on his part, even though the evidence admitted was inadmissible for that purpose.
2. Nor in such a case would it be error requiring the grant of a new trial to charge the jury as to the law of voluntary manslaughter.
3. An instruction touching the law of self-defense, though not strictly accurate, will not be ground for a new trial where, from the defendant's statement, the shooting was not justifiable.

Submitted October 16,—Decided November 8, 1905.

Indictment for assault with intent to murder. Before Judge Hammond. Richmond superior court. July 8, 1905.

*E. B. Baxter,* for plaintiff in error.
*J. S. Reynolds, solicitor-general,* contra.

Evans, J. Rawls was indicted for the offense of assault with intent to murder, and was convicted of the offense of unlawfully shooting at another. In his motion for a new trial he complains of the admission of certain evidence, and assigns error on various instructions which the court gave in charge to the jury. Exception is taken to the overruling of his motion.

1. Bull, the person alleged to have been assaulted, was the brother-in-law of the defendant; and the evidence submitted by the State made out a clear case of assault with intent to murder, without the slightest provocation. The defendant offered certain evidence tending to sustain the facts which he narrated to the jury in his statement. That statement was substantially as follows: Bull was the brother of defendant's wife. Prior to the difficulty he and Bull got along all right, living in the same house, until he had a quarrel with his wife, when Bull loaded his gun for him. This occurred two days before the difficulty under investigation, during which time the defendant had not visited his wife. He had sent his brother to his wife to get some clean clothes, and his brother returned with a message from Bull to the effect that if he came there again Bull would kill him. Bull sent to the defendant for the key to the house which he had, and defendant sent it to him. Defendant was a constable, and it was a common thing with him to borrow a pistol when it was necessary for him to go out at night upon official business. On the night of the difficulty, he entered the barroom where Bull worked and said to him: "Buddie, give me the key to the front door." Bull said, "I can't do that," and when asked the reason, replied, "Because I don't want to." The entrance of some customers interrupted the conversation, and defendant walked up to the proprietor of the bar and spoke to him about Bull's refusal to give him the key. Defendant then went around to the door of the house and rang the door bell; but the family was upstairs, it was late at night, and there was no response. He went back into the barroom and had another conversation with the proprietor, and then approached Bull in a pleasant manner and said to him: "Buddie, set down here and let's have a talk. This is child's play. Let's talk this over like men." Bull replied, "I have no talk for you." and turned and walked to the front door and out into the street. Defendant sat down on a box until Bull came back in, and then said: "Don't you know all I have in the world is up there in that house—my wife and my children and my clothes and everything? I want to see them and give them some money and get some clothes." Bull said, "Well, you can't go." Somebody came in, and defendant said no more at that time, the matter being a family affair which he did not wish to discuss in public. He waited till everybody had gone out, and as Bull came back from the front door, defendant got off

the box on which he had been sitting, started towards him, and said, "I suppose you won't allow me to see Ella and the children?" Bull replied, "No, you can't see nobody here," and defendant then said, "I am going to make a trial for it," and started out of the door. Bull said, "If you do, I'll kill you," and started to get his gun. Defendant knew the gun was there, and jerked out his pistol and fired; did not even turn to fire, but fired just as he was. At the third or fourth shot, Bull fell, and one or two shots came after defendant "took the pistol off of him." In this connection the defendant stated: "I never would have thought of the pistol if he hadn't said that. Just as he said that, and I started out of the door, these threats came to me. I never moved from where I was standing to do that shooting. It was all done like that [snapping his fingers rapidly]. I stood in one track. After the last shot, I backed out of that door and gave myself up to the officer."

The circumstances of the shooting, as narrated by the defendant himself in his statement, fully warranted the verdict which the jury returned. There is nothing in his statement which could have justified the fears of a reasonable man, either that Bull intended to commit a felony upon his person or to take his life, unless he undertook to carry into execution his determination to effect an entrance into the house. When, according to the defendant's version of what occurred, he announced his purpose to do so, Bull said, "If you do, I'll kill you," and started to get his gun, which the evidence disclosed was back of the bar counter. But there was no immediate necessity for the defendant to shoot in self-defense, nor were the circumstances such as to justify the belief that Bull intended to use the gun, save to prevent the defendant from making a forcible entrance into the house. The defendant says that upon the prosecutor making this threat, he fired his pistol without moving from where he was standing, and continued to shoot even after Bull' fell. Certainly the shooting was not justifiable, and if the defendant's statement did not warrant a finding that he was guilty of assault with intent to murder, it at least demanded a finding that he had committed the offense of unlawfully shooting at another. In this connection, it may be said that even though the evidence which was admitted to show malice on the part of the defendant should have been excluded, its admission worked no harm to him, since the jury found that he was guilty of unlawfully shooting at another, and ac-

quitted him of the graver offense of assault with intent to murder, which involves malice.

2. Nor, under such circumstances, should the defendant be granted a new trial because the court improperly charged the jury on the law of voluntary manslaughter, which had no bearing upon the facts of the case. The effect of the verdict was to acquit him of the higher crime, viz., the one charged in the indictment; and as he was not entitled, even upon his own presentation of the facts of the case, to a verdict of not guilty, the shooting not being justifiable, the instruction on the subject of voluntary manslaughter could not have operated to his prejudice.

3. Exception is taken to the following charge of the court: "I charge you that parents and children may mutually protect each other and justify the defence of the person and reputation of each other, and the relation of brother and sister stands upon the same footing of reason and justice. If Rawls failed to support and care for his wife—if he deserted her and maltreated her, she would have the right to seek the care and protection of her brother, Mr. Bull, and Mr. Bull would have the right to give her such care and protection; and it would have been his further right, for this purpose, to prevent Rawls from entering the house, and his refusal to give up the key of the house or to allow Rawls to see his sister could afford Rawls no excuse for attacking him on that account." This charge is excepted to because it was unauthorized by the evidence and was calculated to divert the minds of the jury from the true issue in the case, and because it amounted to an expression of opinion by the court that Bull, in refusing to deliver the key, was acting in defence of his sister. It appears that Bull was shot because of his opposition to defendant's entering his home; but there was nothing to suggest that it was the purpose of the defendant to abuse or maltreat his wife. So much of the charge of the court as related to Bull's refusal to surrender the key, as affording no excuse for attacking him, was pertinent to the case. The intrusion in the charge of the defendant's failure to support his wife, or having deserted or maltreated her, as a reason why she might seek the protection of her brother, was hardly pertinent to the issue before the court. However, the defendant has no just complaint that the charge of the court upon this subject was not adjusted to the facts of the case, because his own version of the occurrence shows that the shooting

was unjustifiable, and that in no view of the case would the jury have been warranted in returning a verdict of not guilty.

> *Judgment affirmed.　All the Justices concur.*